IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAFAEL BELLO,** | : CIVIL NO. 1:11-CV-0639 |
| **Plaintiff** | : |
| v. | : |
| **LEBANON CITY POLICE DEPARTMENT,** *et al.*, | : Judge Sylvia H. Rambo |
| **Defendants** | : |

## **M E M O R A N D U M**

Plaintiff, Rafael Bello, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights as a result of the alleged use of excessive force during his arrest on April 7, 2009. Plaintiff also brings a *Monell* claim as well as derivative state law claims of assault and battery. Presently before the court is Defendants' Motion for Summary Judgment. (Doc. 18.) For the reasons that follow, the motion will be granted.

**I.** **Background**

    **a.** **Facts**[1]

Plaintiff owns a store called "Bello Grocery" located at 1038 Church Street, Lebanon, Pennsylvania. (Doc. 19, Defendants' Statement of Material Facts

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Plaintiff, the non-moving party. The facts set forth are undisputed, unless otherwise noted. The court notes that Plaintiff did not submit a counter-statement of material fact as required under Local Rule 56.1. Plaintiff did however submit a short "counterstatement of the facts" as part of his brief in opposition. However, that counterstatement does not directly respond to Defendants' enumerated statements of fact, and does not contain citations to the record, as required by the rule. Nevertheless, the court, having thoroughly reviewed the parties' submissions, including the deposition testimony of Plaintiff and Defendants Lauver and Bowman as well as other exhibits attached to the filings, is able to determine where any genuine issue of material fact exist without the benefit of a properly filed counterstatement of material fact. The court will otherwise rely on Defendants' statement of material facts (Doc. 19, "SMF") and the accompanying citations to the record, which this court has verified.

("SMF") ¶ 2.) Plaintiff's primary language is Spanish, but he does speak "a little bit" of English. (Doc. 19-1, Bello Dep. p. 4.) Defendants Ben Lauver and Scott Bowman were patrol officers for the Lebanon Police Department during all relevant times. (Doc. 19-2, Lauver Dep. p. 6.; Doc. 19-3, Bowman Dep. pp. 5, 7.) The Lebanon City Police Department ("LPD") and the City of Lebanon are also named as Defendants in this action.

Although this case concerns the events surrounding Plaintiff's arrest on April 7, 2009, facts relevant to the arrest began on December 3, 2008, when Plaintiff was arrested by Officer Lauver for public drunkenness and driving under the influence ("DUI"). (SMF ¶ 3.) Plaintiff refused to submit to chemical testing and, as a result, his license was suspended and a preliminary hearing was scheduled for February 26, 2009. (*Id*. ¶¶ 4, 5.) When Plaintiff failed to appear for the hearing, a bench warrant was issued for his arrest. (*Id*. ¶¶ 5, 6.) Plaintiff requested a hearing on his license suspension. (*Id*. ¶ 8.)

On April 7, 2009, a hearing was scheduled regarding the license suspension, but, once again, Plaintiff failed to appear. (*Id*.) Following the April 7, 2009 hearing, at which Officer Lauver was present, Lauver went to LPD dispatch to see if a bench warrant was issued for Plaintiff's failure to appear at the February 26, 2009 preliminary hearing. (*Id*. ¶¶ 9, 10.) Normally, warrants are held and issued by the Sheriff's Department, but a police officer may serve a bench warrant if they come into contact with someone who has an outstanding bench warrant. (SMF ¶ 11; Lauver Dep. p. 21.) Finding an outstanding bench warrant for Plaintiff, the dispatcher gave the warrant to Officer Lauver. (SMF ¶ 12.) Officer Lauver then called Officer Bowman to meet him near Plaintiff's grocery store and provide back

up as he attempted to serve the warrant. (*Id.* ¶ 13.) Officer Lauver believed that Plaintiff might be armed because Plaintiff's store had been robbed in the past. (*Id.* ¶ 14.)

Officers Lauver and Bowman parked near and subsequently entered the store. (SMF ¶ 15; Lauver Dep. pp. 25-26.) Plaintiff was seated behind the counter, and a customer was also in the store. (SMF ¶ 17; Lauver Dep. p. 29.) After Officer Bowman asked the customer to leave the store, (Bello Dep. p. 44; Lauver Dep. p. 29), Officers Bowman and Lauver approached Plaintiff and informed him in English that they had a warrant for his arrest due to his failure to appear at his preliminary hearing, and that he was under arrest (SMF ¶¶ 18, 19; Bowman Dep. p. 16). Plaintiff was able to understand the Officers when they told him about the warrant. (Bello Dep. p. 51.) Officer Lauver showed Plaintiff the warrant. (Lauver Dep. p. 27.) Plaintiff claims that Officer Lauver would not give him the warrant, but Officer Lauver claims that he offered to give the warrant to Plaintiff, but he refused to take it. (*Compare* Bello Dep. p. 45, *with* Lauver Dep. p. 27.) At this point, Plaintiff became agitated, arguing that the warrant was not valid.[2] (SMF ¶ 20.) Plaintiff raised his voice and started pacing behind the counter. (SMF ¶¶ 23, 24.) Officer Lauver then instructed Plaintiff to place his hands behind his back and again informed him that he was under arrest. (SMF ¶ 22.) Plaintiff continued pacing, stated that he wanted to see his lawyer, and grabbed some papers and placed them on the counter top while still arguing with the officers regarding the validity of the

---

[2] In fact, the warrant was not valid; Bello had already turned himself into the Sheriff's Department, thereby invalidating the warrant. (Bowman Dep. p. 25; Lauver Dep. p. 22; Bello Dep. pp. 38-39.) However, Officers Lauver and Bowman were not aware that the warrant was invalid, and the dispatcher that gave Officer Lauver the warrant had made no such indication. (Lauver Dep. p. 21; Bowman Dep. pp. 13, 25.)

3

warrant. (SMF ¶ 24; Lauver Dep. p. 28.) Officer Lauver claims Plaintiff was "yelling" and "very upset." (Lauver Dep. pp. 27-28.) Plaintiff concedes that he was upset and his voice was raised "a little bit." (Bello Dep. p. 50.) Both Officers unholstered their tasers as Officer Lauver proceeded to walk behind the counter, while Officer Bowman remained across the counter from Plaintiff. (SMF ¶ 25.) Plaintiff continued to be noncompliant with Officer Lauver's demand to put his hands behind his back. (*Id.*) Plaintiff then put his arms up and told the Officers in English he was in possession of a gun. (SMF ¶ 26.) Although the gun was not visible to the Officers at that point, Plaintiff had a gun on his right side under his clothes. (SMF ¶¶ 27, 28.) At his deposition, Plaintiff claimed he had a license for the gun and it was used for protection, but it is unclear whether this was relayed to the Officers. (Bello Dep. p. 48.) Bello states that his body below his belly button would not have been visible to Officer Bowman, who was still standing across the counter at this point. (SMF ¶ 29; Bello Dep. p. 52.) Thus, Plaintiff contends that the Officers could not see the weapon. (Bello Dep. p. 48.)

The details of the following events are disputed. Plaintiff claims that he was tasered immediately after he put his hands up and informed the officers he had a gun. (Bello Dep. p. 49.) Officers Lauver and Bowman both claim they saw the gun and that Plaintiff had pulled it from his waistband and was holding it in his right hand before he was tasered. (Lauver Dep. p. 31; Bowman Dep. p. 18.) According to Officer Bowman, he activated and deployed his taser as soon as he saw the gun, hitting Plaintiff between his chest and belly button. (SMF ¶¶ 32, 33.) Defendant Officers claim that the taser did not work properly because, although Plaintiff fell to the ground, he was not incapacitated. (SMF ¶ 34; Bowman Dep. p. 21; Lauver Dep.

4

p. 32.) Plaintiff, on the other hand, claims he first took the gun out and set it on the floor as he was falling down following the first taser. (Bello Dep. p. 49.) Plaintiff then claims that he took the gun out of his waistband while he was on the ground and put it on the counter. (Bello Dep. p. 54.) According to Officer Lauver, Plaintiff stood back up and faced Officer Lauver who then activated his taser, again hitting Plaintiff in the chest. (SMF ¶ 36; Lauver Dep. p. 32.) At this point, the gun was under the counter. (SMF ¶ 34; Bello Dep. p. 54.) Plaintiff claims that the second tasering happened in the "hallway" on the other side of the counter where the gun was not in reach. (Bello Dep. p. 54.) Officer Lauver claims that Plaintiff was still within arm's reach of the firearm at the time of the second tasering, and, because the second taser was also ineffective, Plaintiff was able to charge at him. (Lauver Dep. pp. 32-33.) Officer Lauver then deployed his drive stun taser. (Lauver Dep. p. 33.) Plaintiff went to the ground and Officer Lauver put a knee on Plaintiff as he attempted to restrain him. (SMF ¶ 39.) Plaintiff also claims he was kicked several times after he was handcuffed. (Bello Dep. p. 58.) Officer Lauver claims that Plaintiff refused to put his hands behind his back and continued to resist and admits giving Plaintiff "one knee strike" to the left ribs as they were attempting to handcuff him. (Lauver Dep. p. 34.)

    After Officers Lauver and Bowman arrested Plaintiff, they took him to Central Booking and called the Sheriff's Department to advise them that they had Plaintiff in custody. (SMF ¶ 40.) At that time, the Sheriff's Department informed Officer Lauver that the warrant had been served previously and was no longer active. (*Id*.) Plaintiff was then taken to the emergency room where the taser prongs

5

were removed and he received a tetanus shot. (SMF ¶ 41; Bello Dep. p. 64.) He received no further treatment. (*Id.*)

At the time of the incident, General Order Number 122, regarding the use of deadly and non-deadly force, was in effect. (SMF ¶ 43.) General Order Number 136, regarding the use of the Taser X26, was also in effect at that time. (*Id.* ¶ 44.) The purpose of General Order 136 was to establish and maintain guidelines for the deployment of tasers. (*Id.*) Both Officers Lauver and Bowman were trained in the use of tasers and were familiar with both polices. (*Id.* ¶ 45.)

### b. Procedural History

Plaintiff filed a complaint on April 7, 2011. (Doc. 1.) Following several extensions, Defendants filed a Motion for Summary Judgment (Doc. 18), a statement of material facts, (Doc. 19), and a brief in support (Doc. 20) on July 12, 2012. On August 14, 2012, Plaintiff filed a brief in opposition (Doc. 24) to which Defendants' replied on August 28, 2012. (Doc. 25.) Thus, the motion is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a)[3]; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323.

---

[3] *See* Fed. R. Civ. P. 56, Advisory Comm. Note (2010 Amendments) (The frequently cited standard for summary judgment is now set forth in Rule 56(a) rather than Rule 56(c)(2010). The
(continued...)

A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the

---

³(...continued)
Advisory Committee explains that despite the language change, "[t]he standard for granting summary judgment remains unchanged" and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases.").

existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III. Discussion
#### a. Section 1983 Fourth Amendment Claim

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). To prevail in an action under Section 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law.

8

*Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Satisfaction of these elements, however, does not guarantee recovery. Qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Certain officials, including police officers performing 'discretionary functions,' are shielded from suit if their conduct did not violate a 'clearly established statutory or constitutional right[] of which a reasonable person would have known.'" *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 748 (M.D. Pa. 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (alterations in original)). The doctrine of qualified immunity provides not only a defense from liability, but also immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Supreme Court, in *Saucier*, explained the analytical process for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

> constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

533 U.S. at 201 (citation omitted). Although the Supreme Court announced that *Saucier*'s two-step protocol is not mandatory, courts have the discretion to decide whether that procedure is worthwhile in particular cases. *Pearson v. Callahan,* 555 U.S. 223, 240 (2009).

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. *See Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); *see also Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir.1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)"). The court may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that defendants did not violate rights that were *clearly established* at the time the defendant acted. *See Dull*, 604 F. Supp. 2d at 748-49 (citing *Pearson*, 555 U.S. at 240).

To establish an excessive force claim under the Fourth Amendment, "a plaintiff must show both that a seizure occurred and that it was unreasonable." *Lynn v. Schertzberg*, 169 F. App'x 666, 669 (3d Cir. 2006) (citing *Kopec v. Tate*,

361 F.3d 772, 776 (3d Cir. 2004)). "To determine reasonableness, the Court asks whether the officer's conduct was 'objectively reasonable' in light of the totality of the facts and circumstances." *Id.* The determination of whether the force employed by a defendant was excessive requires the court to evaluate the reasonableness of "a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham v. Conner*, 490 U.S. 386, 396 (1989). Factors that the court should consider include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers and others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight, (4) the duration of the action, (5) the possibility that the suspect may be armed, (6) the number of persons with whom the police officers must contend at one time ("the *Graham* and *Sharrar* factors"). *See Graham*, 490 U.S. at 396; and *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). The court should be sensitive to "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006.)

On the factual record before the court, drawing all inferences in favor of Plaintiff, the court finds that there are sufficient factual ambiguities to preclude a finding as to the reasonableness of the Defendants' actions. For example, Defendants claim Plaintiff resisted arrest and threatened use of his gun. Plaintiff, however, claims he did not resist and was merely trying to explain to the officers that the warrant was invalid and that he had a gun. Further, Defendants claim Plaintiff wielded his gun, while Plaintiff claims he was merely trying to show the

11

officers that he legally possessed a gun which was on his person. Moreover, some of the *Graham* and *Sharrar* factors weigh in favor of Plaintiff while others favor Defendants. For example, the crime at issue, not appearing for a preliminary hearing, is not severe. Also, it does not appear that anyone's welfare was threatened other than the individuals that are a party to this suit, and there is no dispute that the two officers were only dealing with one person (Plaintiff). Conversely, Plaintiff did not obey orders to put his hands behind his back, and it is undisputed that he was in possession of a gun before and during the arrest. It is not clear whether Defendants warned Plaintiff that he would be tased if he did not comply with the officers' request. *See Brown v. Cwynar*, 2012 U.S. App. LEXIS 11466, *10 (3d Cir. June 7, 2012) (citing *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (noting that an officer's use of force was unreasonable when he did not provide a warning before deploying the taser)). In short, the record is unclear on the critical question of whether Plaintiff was in the process of surrendering or was continuing to resist arrest and the reasonableness of Defendants actions cannot be evaluated without credibility determinations and the resolution of these factual issues. Accordingly, the motion for summary judgment will not be granted in this basis.

The court will, however, grant Defendants' motion because, assuming *arguendo* that Defendants' actions were unreasonable and amounted to excessive force in violation of the Fourth Amendment, Plaintiff has failed to show that Defendants violated a clearly established right. As stated, a right is clearly established if a reasonable official would understand that what he is doing violates a that right. *Ashkroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). In this context, it must be shown that "every 'reasonable official'" in Officers Lauver and Bowman's

12

shoes would have understood "beyond debate" that tasering Plaintiff would have constituted excessive force. *See id.; see also Snowden v. City of Phila.*, 2012 U.S. Dist. LEXIS 143615, *23-24 (E.D. Pa. Oct. 4, 2012). It has been said that qualified immunity provides police officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244, __ U.S. __ (Mar. 30, 2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In this case, there are several undisputed facts that necessitate a finding of qualified immunity. For example, it is undisputed that: (1) Officers Lauver and Bowman were given a bench warrant for Plaintiff by dispatch which they had no reason to believe was invalid, (2) Plaintiff openly disputed the validity of the bench warrant and raised his voice at Officers Lauver and Bowman, (3) Plaintiff refused to comply with police orders, (4) Plaintiff was in possession of a gun at the time of the arrest, and (5) at some point during the arrest, Plaintiff grabbed his gun, held it in his hand, and then put it on or below the counter. Regardless of the any parties' intent or interpretation of these events, these undisputed facts require the application of qualified immunity because not every reasonable officer in Defendants' shoes would find "beyond debate" that tasering Plaintiff constituted excessive force. In fact, at the time of the events in question, numerous courts had approved the use of taser guns to subdue individuals who resist or refuse to comply with police orders. *See Brown*, 2012 U.S. App. LEXIS 11466, at *12 (citing *Draper v. Reynolds*, 369 F.2d 1270, 1278 (11th Cir. 2004); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993); and *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992)). Accordingly, if courts have approved this level of force under these circumstances,

it cannot be said that Officers Lauver and Bowman were plainly incompetent or knowingly violated the law. *See Carswell*, 381 F.3d at 243 ("Where there is at least some significant authority that lends support of the police action, we have upheld qualified immunity even while deciding that the action in question violates the Constitution.") Moreover, the fact that the warrant ultimately proved to be inactive is of no moment because the court resolves all issues through the perspective of a reasonable officer on the scene at the time of the relevant events, rather than with 20/20 vision of hindsight. *See Graham*, 490 U.S. at 396. In light of these undisputed circumstances, the court finds that Officers Lauver and Bowman are entitled to qualified immunity as to Plaintiff's Fourth Amendment excessive force claim.

Although the clear crux of Plaintiff's complaint, as well as the presently pending motion and briefs, is Plaintiff's Fourth Amendment excessive force claim, the court will also address Plaintiff's claims that his rights were violated as a result of a "warrantless" arrest. (Doc. 1, Compl., ¶ 33(a) (alleging that Defendants violated his right to "Freedom from the unreasonable seizure of his person").) Plaintiff's argument as to a warrantless arrest is offered only *in support of* his Fourth Amendment excessive force claim. (*See* Doc. 24 at p. 9) ("Defendant's [sic] utilized excessive force under the circumstances as they had no valid warrant to arrest the person of Plaintiff.") However, even assuming that Plaintiff asserted a separate and distinct claim based on the "warrantless" arrest, the court concludes that this claim would fail. In *Anderson v. Creighton*, the Supreme Court held that a law enforcement officer that "reasonably but mistakenly conclude[s]" that the constitutional predicate for a search or seizure was present

14

"should not be held personally liable." 483 U.S. 635, 641 (1987). In fact, the Supreme Court has long afforded law enforcement officers freedom from liability where reasonable mistakes are made. *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) (citing *Hill v. California*, 401 U.S. 797, 803-04 (1971) and *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). Here, the record reflects that Officer Lauver asked LPD dispatch if a bench warrant had been issued for Plaintiff. Dispatch checked the system, then handed a warrant to Officer Lauver. (SMF ¶ 12.) At the time Officer Lauver was handed the warrant, he had no reason to believe the warrant was invalid. Likewise, Officers Lauver's and Bowman's reliance on the warrant at the time of the arrest was reasonable, not withstanding Plaintiff's agitation and protestations that the warrant was invalid. Indeed, it would be utterly unreasonable for an officer to accept and rely on an arrestee's claim that a warrant is invalid when there is no independent reason to believe such is the case. Accordingly, to the extent Plaintiff's complaint sets forth a separate Fourth Amendment violation for a warrantless arrest, this claim must fail.

      **b.**    **Monell Claim**

Plaintiff's Monell claim also fails. For municipal liability to attach to the City of Lebanon, Plaintiff must allege that the City itself caused a constitutional violation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). *Respondeat superior* is not a viable theory of municipal liability. *Id.* at 663. Instead, a plaintiff must plead and prove that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original); *accord Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). To do so, a plaintiff must allege that a

municipal custom or policy was the proximate cause of the constitutional injury sustained. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). To establish that a municipality has a custom that violates Section 1983, a plaintiff must identify a custom or practice "so permanent and well-settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Andrews*, 895 F.2d at 1480). A policy is established if a plaintiff can show that a "decisionmaker possessing final authority to establish municipal policy with respect to the action 'issues an official proclamation, policy or edict.'" *Id.* In *Carswell*, the Third Circuit held that "a plaintiff must identify a municipal policy or custom that amounts to deliberate indifference of the rights of people with whom the police come into contact." 381 F.2d at 244. In order to do so, a plaintiff typically must show a pattern of underlying constitutional violations. *Id.* Prevailing on a municipal liability claim in the absence of such a showing is "a difficult task." *Id.*

In its motion, Defendants argue that Plaintiff has not pointed to any specific policy or custom that caused his injuries. Typically in an excessive force municipal liability claim, the court looks for evidence of a custom or policy involving a failure to properly train, equip, or supervise officers on the proper use of force. To this end, Defendants are correct: Plaintiff has produced no evidence of a policy or custom for failure to properly train, equip, or supervise officers on the proper use of force. Indeed, the record clearly shows that the City of Lebanon and the LPD had appropriate polices and procedures in place regarding the use of force

and the use of tasers.[4]  Moreover, both Officers Lauver and Bowman testified they were properly trained in the procedures regarding the appropriate use of force to effectuate arrests, including the proper use of a taser.  (Lauver Dep. p. 9; Bowman Dep. p. 8.)  Plaintiff offers no evidence or argument to the contrary.

Instead of claiming that the City of Lebanon failed to properly train, equip, or supervise officers on the proper use of force, Plaintiff instead argues in his response that LPD had a custom of failing to purge inactive warrants by properly coordinating efforts with other law enforcement agencies and that Plaintiff's constitutional rights were violated by this "warrant box flaw."[5]  (Doc. 24, p. 20.) This alleged custom of failing to purge inactive warrants is not directly related to Officers Lauver and Bowman's use of force.  Rather, such a custom would be more relevant to a claim of a Fourth Amendment violation for a warrantless arrest.

Several flaws are apparent in Plaintiff's argument.  In order to make a claim for municipal liability, it is necessary to produce evidence of a "policy" or "custom."  Plaintiff has failed to produce any evidence of a policy or custom and instead only reiterates the facts of this particular case in his response.  For example, Plaintiff argues that "the dispatcher handed Lauver the invalid warrant without **any** investigation by either Lauver or the dispatcher."  (Doc. 24, p. 22) (emphasis in original.)  Plaintiff goes on to argue that "a method should have been in place at

---

[4]   At the time of the incident, General Order 122 was in effect which clearly specifies the amount of force appropriate for various situations an officer in the LPD may encounter.  Moreover, General Order 136 clearly established guidelines for the deployment of the tasers used by Officers Lauver and Bowman.

[5]   In his complaint, Plaintiff avers that the City of Lebanon and LPD had policies in place that promoted the inadequate investigation of citizen complaints of police misconduct and the inadequate training and supervising of police officers.  Plaintiff, however, did not further pursue these arguments and, instead, the court hears now for the first time the "warrant box flaw" argument.

17

LPD to prevent the double arrest and constitutional violation of Bello," and "because there was no policy of cross-indexing with other agencies the service or invalidity of warrants . . . the lack of a policy amounts to a deliberate indifference." (*Id.* at p. 23.) This argument falls short. Plaintiff neither argues nor produces any evidence that an actual "policy" was issued by a decision maker possessing final authority. Likewise, there is no evidence, or even any argument, that the "warrant box flaw" was so permanent and well-settled as to constitute a "custom." Moreover, Plaintiff produces no evidence of a pattern of underlying constitutional violations as a result of this practice. It is entirely possible, based on this record, that LPD does have a cross-indexing policy and the facts of this case represent mistake or anomaly on behalf of LPD dispatch. In short, regardless of whether the court interprets Plaintiff's complaint to set forth a Fourth Amendment excessive force claim or a Fourth Amendment warrantless arrest, Plaintiff's claim of municipal liability fails because he failed to produce any evidence of a policy or custom that violates Section 1983. Defendants' motion will therefore be granted as to this claim.

        c.     **<u>Assault and Battery</u>**

The only remaining claims are Plaintiff's state law tort claims for assault and battery. However, the parties have not articulated specific reasons for the court to entertain these claims in the absence of a federal cause of action, and the court declines to do so. *See* 28 U.S.C. § 1367(c) ("The district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court dismissed all claims over which it has original jurisdiction."); *Smith v. Dauphin Cnty. Adult Prob. Dep't*, 2007 U.S. Dist. LEXIS 67400, *36 (M.D. Pa.

Sept. 12, 2007) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")).

**IV.** **Conclusion**

The court finds that Defendant Officers Lauver and Bowman are entitled to qualified immunity because the circumstances of this case would not lead every reasonable officer in Officers Lauver and Bowman's shoes to believe beyond debate that tasering Plaintiff would have constituted excessive force. Moreover, Plaintiff's *Monell* claim against the City of Lebanon will be dismissed because Plaintiff failed to produce any evidence of a policy or custom that would cause a constitutional violation. Lastly, because the court has dismissed all Plaintiff's federal claims, the court declines to exercise jurisdiction over Plaintiff's pendent state claims.

An appropriate order will be issued.

S/SYLVIA H. RAMBO<br>United States District Judge

Dated: January 3, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**RAFAEL BELLO,** : CIVIL NO. 1:11-CV-0639
:
    **Plaintiff** :
:
    v. :
:
**LEBANON CITY POLICE** :
**DEPARTMENT,** *et al.,* : **Judge Sylvia H. Rambo**
:
    **Defendants** :

# O R D E R

In accordance with the accompanying memorandum, it is **HEREBY ORDERED** as follows:

    1.    Defendants' motion for summary judgment (Doc. 18) is **GRANTED**. The clerk of court is directed to enter judgment against Plaintiff and in favor of Defendants on all claims arising under federal law.

    2.    Plaintiff's Pennsylvania state law claims of assault and battery are **DISMISSED** without prejudice.

    3.    The clerk of court is directed to **CLOSE** this case.

                                            S/SYLVIA H. RAMBO
                                            United States District Judge

Dated: January 3, 2013.